IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| MARON ISOM, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:04-1037-10BD |
| v. ) | |
| ) | |
| FORD MOTOR CREDIT ) | **REPORT AND RECOMMENDATION** |
| COMPANY, WENDELL ) | |
| HOLMAN AND SANDRA ) | |
| HOLMAN, ) | |
| ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This action was filed by the Plaintiff on the basis of diversity jurisdiction. The Defendants Wendell and Sandra Holman filed a pro se answer on April 22, 2004, while the Defendant Ford Motor Credit Company filed an answer and counterclaim on January 27, 2005. Plaintiff answered Ford Motor Credit's counterclaim on February 22, 2005.

The Defendant Ford Motor Credit filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on April 28, 2006. As two co-Defendants are proceeding pro se, a Roseboro order was entered by the Court on May 3, 2006, advising the pro se litigants of the importance of a dispositive motion and of their need to adequately respond to such motions. Plaintiff thereafter filed a memorandum in opposition to Ford Motor Credit's motion for summary judgment on June 6, 2006, with a reply memorandum being filed by Ford Motor Credit on June 13, 2006. Neither of the pro se Defendants have filed a response to any of these filings, which are now before the Court for

1



disposition.[1]

**Background and Evidence**[2]

In March 2001, Plaintiff owned a used car dealership in Columbia, South Carolina. Plaintiff had discussions with Royce Howsare and Charles Boland, both employees of Ford Motor Credit, about a Ford dealership in Cheraw, South Carolina that was potentially for sale. The Cheraw dealership was having financial difficulties. Plaintiff's Deposition, pp. 30, 59-60. Plaintiff was advised that Ford Motor Credit was going to take control of the dealership from the owner, the Defendant Holman, for not paying Ford Motor Credit for vehicles it had sold. Plaintiff's Deposition, pp. 53-54, 89-90. Howsare suggested to the Plaintiff that the Cheraw dealership would be a good opportunity for someone like him to purchase a new car dealership. Plaintiff's Affidavit, ¶¶ 7-8. Plaintiff was further advised by Howsare that in order to purchase the dealership from Holman, Plaintiff also would have to pay the "out of trust" amount owed to Ford Motor Credit of $164,893.14. Plaintiff's Deposition, p. 43; Plaintiff's Affidavit, ¶¶ 6 and 9.

Plaintiff met with the Defendant Holman on April 6, 2001 to execute documents to initiate the purchase of the dealership. Plaintiff's Deposition, pp. 97-98; see Defendants' Exhibit B. An agreement was signed which provided, in part, that Plaintiff

"shall comply with the terms of [Holman's] existing sales and service agreement with

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), D.S.C. The Defendant Ford Motor Credit has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2] The facts and evidence are considered and discussed hereinabove in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

2



> Ford Motor Corporation (FMC) and all of Ford Motor Credit Company's (FMCC) rules and regulations.  [Plaintiff] and [Holman] shall furthermore comply with all of the rules and regulations of Ford Motor Company's floor planning and/or purchasing of retail contracts or other financial matters of the dealership and shall continue those relationships. [Plaintiff] and [Holman] agree to maintain the existing Ford Motor Credit Company's floor plan in effect during the full term of this management agreement."

<u>Interim Management Agreement and Offer to Purchase Real Estate</u>.

Plaintiff returned to Columbia from Cheraw and met with Howsare, who reviewed the agreement.  Plaintiff then gave Howsare a cashiers check for $164,894.14 to bring the dealership's account current and also signed a guarantee given to him by Howsare.  Howsare congratulated the Plaintiff and told him that if he went to the dealership Monday morning, April 9, 2001, Ford Motor Credit would turn control of the keys and titles over to the Plaintiff.  <u>Plaintiff's Affidavit</u>, ¶¶ 12-16.  Plaintiff attests that, as he was leaving, Howsare told him to contact Mike Gray at Ford Motor Company about an application to take over the dealership.  <u>Plaintiff's Affidavit</u>, ¶ 17.  Plaintiff attests in his affidavit that this was the first time he had been told that he would have to contact Ford Motor Company about submitting an "application" to take over the dealership. <u>Id</u>.  On Monday, April 9, 2001, Charles Boland gave Plaintiff the keys and titles to the Cheraw dealership, and Plaintiff assumed management of the dealership. <u>Plaintiff's Affidavit</u>, ¶ 18.  Howsare later told the Plaintiff in June 2001 that he [Plaintiff] had saved him [Howsare] from losing five hundred thousand ($500,000) dollars.  <u>Plaintiff's Affidavit</u>, ¶ 27.

Plaintiff was subsequently advised that the interim management agreement he had signed was not sufficient documentation for Ford Motor Company to act on his application. Accordingly, Plaintiff's accountant, Robert Birch, had a buy-sell agreement drawn up by an attorney for Holman's signature; however, Holman refused to sign this document.  <u>Plaintiff's Deposition</u>, pp.

3



67-76. Plaintiff states that in July 2001, he was advised by his attorney and accountant that, due to his financial statement and background, he would "never qualify...to be the owner of a Ford dealership." [3] Plaintiff's Affidavit, ¶¶ 27-28. Plaintiff left the management of the dealership on September 13, 2001. Plaintiff's Affidavit, ¶ 30.

Plaintiff thereafter filed this action against the Defendants asserting claims for fraud (first cause of action - against all Defendants), negligent misrepresentation (second cause of action - against all Defendants), constructive fraud (third cause of action - against all Defendants), fraud in the inducement (fourth cause of action - against all Defendants), violation of the Unfair Trade Practices Act (fifth cause of action - against the Defendant Ford Motor Credit), breach of contract (sixth cause of action - against the Defendants Holman), and breach of contract accompanied by a fraudulent act (seventh cause of action - against the Defendants Holman).

## **Discussion**

The Defendant Ford Motor Credit has moved for summary judgment on all of Plaintiff's claims asserted against this Defendant (Plaintiff's first, second, third, fourth and fifth causes of action). None of Plaintiff's claims against the Defendants Holman are addressed in this motion, nor is Ford Motor Credit's counterclaim against the Plaintiff.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

---

[3] Plaintiff has not submitted affidavits or any other documentation from either of these individuals. Therefore, the undersigned has not considered Plaintiff's statement concerning these individuals' purported advice to him as evidence for purposes of Defendant's summary judgment motion.



law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

**I.**

**(Fraud Claims and Claim for Negligent Misrepresentation)**

Ford Motor Credit first moves for summary judgment with respect to all of Plaintiff's fraud claims (fraud, constructive fraud, and fraud in the inducement) as well as Plaintiff's claim for negligent misrepresentation, arguing that under South Carolina law a plaintiff must show the falsity of a representation in order to sustain a claim for negligent misrepresentation, fraud, constructive fraud, or fraud in the inducement, and that there is no evidence that any false representations were made in this case. See Ardis v. Cox, 431 S.E.2d 267, 269 (S.C.Ct.App. 1993) [allegations of fraud must include as one of its elements a false representation]; M.B. Kahn Const. Co. v. South Carolina National Bank, 271 S.E.2d 414, 415 (S.C. 1980) [failure to prove an element of fraud is fatal to a litigant's recovery on their claim]; Pitten v. Jacobs, 903 F.Supp. 937, 951, n. 17 (D.S.C. 1995) [elements of negligent misrepresentation claim in South Carolina include that the defendant made a false representation to the plaintiff]. The undersigned does not agree.

Considered in the light most favorable to the Plaintiff, Plaintiff has presented evidence to the Court to show that Howsare was intimately involved with, and knowledgeable of, the financial status of the Cheraw dealership, but that Plaintiff was not made aware of this additional and highly critical information. Howsare instead actively encouraged Plaintiff to purchase the Cheraw dealership, telling him it would be a good opportunity for him, when in fact Howsare knew that the

5



payment of $164, 893.14 was not all that it would take to make this dealership a viable, ongoing concern, and that the indebtedness of the dealership was actually much greater and it would take a great deal more money to turn that business around. See Plaintiff's Exhibits C-2 and C-3. Plaintiff attests that in June 2001, after he had paid Ford Motor Credit its past due indebtedness, Howsare took him to dinner to thank him for "saving him" from losing five hundred thousand ($500,000) dollars. Plaintiff's Affidavit, ¶ 27. Plaintiff contends that he subsequently learned that when Howsare first discussed the dealership with him, Ford Motor Credit knew it would take an investment of approximately four hundred and sixty thousand ($460,000) dollars to continue to operate the dealership, and that only three days before he gave Ford Motor Credit his cashiers check, the Defendant had estimated its loss at the dealership would be around four hundred forty seven ($447,000) dollars. Plaintiff's Affidavit, ¶ 27; see also Plaintiff's Exhibits C-2 and C-3.

The evidence also shows that Plaintiff was not knowledgeable about the requirements for obtaining a Ford dealership. Conversely, Howsare was intimately aware of the requirements and what had to be done to become an approved dealer. Howsare Deposition, pp. 116-117, 126, 149-150. When Plaintiff brought Howsare the agreement he had executed with Holman on April 6, 2001, Howsare first reviewed the documents and then congratulated him, telling him to pay the $164,893.14 owed to Ford Motor Credit and to further execute a guarantee agreement to Ford Motor Credit, following which Ford Motor Credit would turn over the keys of the dealership to him. Again, Plaintiff was not told of the dealership's true financial situation during this conversation. Plaintiff further attests that it was not until *after* he had turned over the check to Howsare and signed the guarantee agreement that Howsare informed him that he would also have to submit an application

6



to Ford Motor Company to be approved to run the dealership as a Ford dealer.[4]

This evidence is sufficient to create a genuine issue of fact as to whether false representations were made to the Plaintiff in order to induce him to become involved in the Cheraw dealership, and more importantly, to pay Ford Motor Credit a large past due amount owed to this Defendant by Holman. The undersigned also does not find that these statements and representations were mere opinions, unfulfilled promises, or statements as to future events. Rather, considered in the light most favorable to the Plaintiff, they related to present or pre-existing facts and were false based on Howsare's own knowledge of the then current condition of the Cheraw dealership. Fields v. Melrose Ltd. Partnership, 439 S.E.2d 283, 284 (S.C.Ct.App. 1993) [while a claim based on unfulfilled promises or statements as to future events is not ordinarily actionable, a representation which relates to a present or pre-existing facts and which is false when made is actionable].

Ford Motor Credit also argues that, even if sufficient evidence of a false statement has been presented to survive summary judgment, Plaintiff's claim still fails because his reliance on the allegedly false information was not justifiable. Pitten, 903 F.Supp. at 951 [to establish a claim of negligent misrepresentation in South Carolina, Plaintiff must have justifiably relied on the allegedly false representation]; M.B. Kahn Const. Co., 271 S.E.2d at 415 [in order to recover on a claim of fraud, a plaintiff must prove their right to rely on the allegedly false representation]. Ford Motor Credit argues that the parties here were "business sophisticates" capable of protecting themselves,

---

[4] Defendant argues that Plaintiff acknowledged at his deposition that he already knew that Ford Motor Company would have to approve him as a dealer. However, a review of the deposition transcript does not show that Plaintiff testified he knew that Ford Motor Company would have to approve him as a dealer. Rather, he testified that he knew that "Ford" had to approve him as a dealer, not Ford Motor Company. Plaintiff's Deposition, p. 182. Plaintiff argues that he believed that this approval would come from Ford Motor Credit, the entity with which he was consulting regarding the purchase of the dealership.

7



and that if Plaintiff had wished to perform further due diligence or investigation prior to executing his agreement with Holman or tendering Ford Motor Credit his cashiers check, he could have done so. However, the evidence reflects that Ford Motor Credit had a long business relationship with Holman Ford; knew the financial details of the dealership; approached the Plaintiff about acquiring the dealership, telling him it was a good opportunity for him, notwithstanding the dealership's known financial troubles, represented itself as being in effective control with dominion over the dealership and explained what was needed for Plaintiff to take over; and provided information concerning the operation of the dealership, all information on which Plaintiff had a right to rely. See Plaintiff's Affidavit, ¶¶ 1-7; see also Howsare Deposition, pp. 116-117, 127; Ford Motor Credit Company's Answer to Plaintiff's Interrogatories (Plaintiff's Exhibit D), Nos. 1, 12 and 14; Plaintiff's Response to Defendants' Request for Production (Plaintiff's Exhibits C-1, C-2 and C-3).

Considering the evidence, and the inferences to be drawn from the evidence, in the light most favorable to the Plaintiff, the undersigned does not find that "[n]o reasonable trier of fact could conclude" that Plaintiff was not justified in relying on Howsare's representations under the evidence submitted. Spratley v. Hampton City Fire Dept., 933 F.Supp. 535, 542 (E.D.Va. 1996), aff'd, 125 F.3d 848 (4th Cir. 1997); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 259 (1986) ["Credibility determinations, the weighing of evidence, and the choosing of inferences from the facts" are functions of the jury]; Muhammad v. Klotz, 36 F.Supp.2d 240, 243 (E.D.Pa. 1999) ["Thus, at the summary judgment stage the only inquiry is the threshold one of determining whether there is a need for a trial, that is, 'whether the evidence presents a sufficient disagreement to require submission to [the jury] or whether it is so one-sided that one party must prevail as a matter of law'"], citing Anderson, 477 U.S. at 250-252.

8



> The principle of the right of reliance upon representations is closely bound up with a duty on the part of the plaintiff to use some measure of protection and precaution to safeguard his own interest. Thomas v. Am. Workmen, 14 S.E.2d 886, 888 (S.C. 1941). It is largely because the law of fraud requires [a claimant] to prove his ignorance of the falsity of the representation and his right to rely on the falsity that the courts long ago established the rule that ordinarily one cannot complain of fraud in the misrepresentation of the contents of a written instrument signed by him when the truth could have been ascertained by reading the instrument, and that one entering into a written contract must read it and avail himself of every reasonable opportunity to understand its content and meaning.

Regions Bank v. Schmauch, 582 S.E.2d 432, 445 (S.C.Ct.App. 2003)(citing PPG Indus., Inc. v. Orangeburg Paint & Decorating Ctr., Inc., 375 S.E.2d 331, 333 (S.C.Ct.App. 1988)).

Here, while the agreement Plaintiff signed was not a "buy/sell" contract, it did include an agreement to purchase real estate, and the evidence shows that Plaintiff took the agreement to Howsare to review prior to tendering his check and signing Ford Motor Credit's guarantee. Howsare, who by his own testimony was intimately aware of the requirements to become a dealer, reviewed the documents, congratulating Plaintiff on his achievement, and then had Plaintiff remit a cashiers check in the amount of money owed Ford Motor Credit as well as sign a guarantee to Ford Motor Credit. Under these facts, a genuine issue of fact exists as to whether Plaintiff availed himself of a reasonable opportunity to understand the transaction he was entering and whether he had a right to rely on Howsare's statements and conduct to survive summary judgment. Unlimited Services, Inc. v. Macklen Enterprises, Inc., 401 S.E.2d 153, 155 (S.C. 1991) ["The general rule is that questions concerning reliance and its reasonableness are factual questions for the jury"]; Starkey v. Bell, 315 S.E.2d 153, 156 (S.C.Ct.App. 1984) ["Issues of reliance and its reasonableness, going as they do to subjective states of mind and applications of objective standards of reasonableness , are pre-eminently factual issues for the triers of facts"]. This evidence is also sufficient to raise a material fact as to whether Ford Motor Credit, through Howsare, was effectively acting as a trustee or

9



receiver with respect to the dealership while it was trying to find a third party to repay the money owed to it by the dealership and that by acting in such a capacity and inducing the Plaintiff to sign agreements and pay money, it breached its duty to the Plaintiff to deal with him in an honest and forthright manner in trying to broker the transaction. Id., see also Elders v. Parker, 332 S.E.2d 563, 567 (S.C.Ct.App. 1985) ["Whether reliance is justified in a given situation requires an evaluation of the circumstances involved, including the positions and relations of the parties"].

Defendant Ford Motor Credit's motion for summary judgment with respect to Plaintiff's fraud and negligent misrepresentation causes of action should be denied.

**II.**

**(Claim under the South Carolina Unfair Trade Practices Act)**

Plaintiff's fifth cause of action is a claim asserted under the South Carolina Unfair Trade Practices Act (UTPA). See S.C.Code Ann. § 39-5-20, et. seq.. To establish a claim under this Act, Plaintiff must show "1) that the defendant engaged in an unlawful trade practice, 2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and 3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest." Havird Oil Co., Inc. v. Marathon Oil Co., Inc., 149 F.3d 283, 291 (4th Cir. 1998). An unfair trade practice is defined as "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade." S.C.Code Ann. § 39-5-20(a). Unfair trade practices are practices which are "offensive to public policy or which [are] immoral, unethical, or oppressive....[While a] deceptive practice is one which has a tendency to deceive." deBondt v. Carlton Motorcars, Inc., 536 S.E.2d 399, 407 (S.C.Ct.App. July 24, 2000) (citing Young v. Century, Lincoln-Mercury, Inc., 396 S.E.2d 105, 108 (S.C.Ct.App. 1989), aff'd in part, rev'd in part on other

10



grounds, 422 S.E.2d 103 (1992)). "Even a truthful statement may be deceptive if it has a capacity or tendency to deceive[,]" and in determining whether a practice is unfair or deceptive within in the meaning of the UTPA, the finder of fact should look to the surrounding facts and the impact of the transaction on the market place. Id.

Plaintiff alleges that Ford Motor Credit, through its agent Royce Howsare, engaged in an unlawful trade practice when it induced Plaintiff into signing a contract to purchase the Cheraw dealership and pay over $164,893.14, as well as sign a continuing guarantee, when the dealership in question was in fact unable to meet its obligations, resulting in a further loss of money by the Plaintiff, and which was in fact a dealership that Plaintiff was not even able to purchase. With respect to the requirement of the alleged unlawful trade practice having an adverse impact on the public interest, the Complaint alleges that Ford Motor Credit is in the business of lending money to automobile dealerships to finance inventory, and is also in the business of lending money to consumers for the purchase of automobiles. Plaintiff argues that if the actions of this Defendant are found to have been unfair or deceptive, such conduct may affect the public interest because, as the Defendant is in the business of consumer loans, it has the potential for repetition if uncorrected. *Cf.* Barnes v. Jones Chevrolet Co., 358 S.E.2d 156, 159-160 (S.C.Ct.App. 1987); Goiser v. Harper, 413 S.E.2d 845, 846 (S.C.Ct.App. 1991); American Motors Sales Corp. v. Division of Motor Vehicles of Co. of Va., 592 F.2d 219, 222 (4th Cir. 1979), cert. denied, 444 U.S. 836 (1979).

Ford Motor Credit first asserts that there is no evidence of any deceptive or unfair act in Howsare's conduct or representations, arguing that what Howsare told the Plaintiff was in fact true, and that it is the Plaintiff himself who is to blame for his business loss because he failed to perform the necessary due diligence required in a business transaction before executing his

11



agreement with Holman. However, for the reasons previously set forth in Section I, supra, the undersigned does find sufficient evidence of unfair or deceptive acts on the part of Ford Motor Credit's representative to create a genuine issue of fact as to that issue and to survive summary judgment. See discussion, supra.

Ford Motor Credit also argues that there is no evidence to show an adverse impact on the public interest sufficient to set forth an UTPA claim, noting that under South Carolina law unfair or deceptive acts have an adverse impact on the public only if those acts have the potential for repetition. Bessinger v. Food Lion, Inc., et al., 305 F.Supp.2d 574, 581 (D.S.C. 2003), (citing Jefferies v. Phillips, 451 S.E.2d 21 (S.C.Ct.App. 1994)). Conduct that affects only the parties to the transaction and not the public interest provides no basis for an UTPA claim. Id.

Here, however, there is evidence in the record to support an argument that the Defendant's conduct has the potential for repetition and could adversely affect members of the public; i.e., in this case, other prospective purchasers of this business. The evidence reflects that, despite Ford Motor Credit having encouraged Plaintiff to pursue the dealership and accepted Plaintiff's check for $164,893.14, Ford Motor Credit was actually assisting Holman with negotiations with another group or entity to purchase the dealership. Plaintiff's Affidavit, ¶ 29; see also Howsare Deposition, p. 186. Therefore, this is not a situation like was present in the case of Ardis v. Cox, where the trial court granted a vendor's motion for summary judgment where the vendor had been sued by a gas station operator alleging the vendor had committed an UTPA violation arising out of the vendor's alleged misrepresentations regarding the capacity of underground storage tanks. In that case, the Court found that "the only evidence was that this was an isolated sale between private individuals and that no similar transactions were made or contemplated..." and therefore no public

12



impact could be found. Ardis, 431 S.E.2d at 271. Here, there is evidence that other similar transactions were made or contemplated. Further, Ford Motor Credit retains the ability to continue to engage in this type of deceptive behavior (assuming Plaintiff's claims to be true) with other dealerships who may be in financial difficulty.

Therefore, Defendants' motion for summary judgment with regard to this claim should be denied.

**Conclusion**

Based on the foregoing, it is recommended that the Defendant Ford Motor Credit's motion for summary judgment be **denied**.

The parties are referred to the Notice Page attached hereto.

Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

February 22, 2007


**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

